IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KEITH L. DROLLINGER,                                       CV-09-134-AC

        Plaintiff,                                       FINDINGS AND
                                                          RECOMMENDATION

        v.

SUSAN R. GERBER, HARDY MYERS,
and JOHN KROGER, sued in their
individual and official capacities,

        Defendants.

---

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Plaintiff Keith L. Drollinger ("Drollinger"), a *pro se* prisoner, brings this § 1983 action against Susan R. Gerber ("Gerber"), Hardy Myers ("Myers"), and John Kroger ("Kroger") (collectively, "Defendants"), in their individual and official capacities as employees of the

Page -1- FINDINGS AND RECOMMENDATION                                              {SSM}

Department of Justice ("DOJ"). Drollinger alleges a violation of his First and Fourteenth Amendment rights and brings state law claims for breach of contract and negligence, based on the handling of the post-conviction relief ("PCR") proceedings pertaining to his underlying criminal conviction.

Presently before the court is the defendants' motion for summary judgment. For the reasons set forth below, the motion should be granted.

*Background*

Drollinger is an inmate in the custody of the Oregon Department of Corrections ("ODOC"), housed at Snake River Correctional Institution ("SRCI"). (Third Am. Compl. (docket # 45), ¶ 4.) Drollinger alleges that Gerber, a former Assistant Attorney General ("AAG") took certain actions in his state PCR proceedings that violated his rights. (*Id*. at ¶¶ 5, 15-59, 63-64.) He alleges that Myers, the Oregon Attorney General at the time, violated his rights by failing to adequately supervise Gerber and by allowing her to violate his rights despite his complaints. (*Id*. at ¶¶ 6, 12-14, 60-62.) He alleges that Kroger, the current Oregon Attorney General, violated his rights by failing to adequately supervise the other attorneys in his office and allowing them to take action that violated his rights. (*Id*. at ¶¶ 7, 65.) Drollinger seeks money damages and injunctive relief. (*Id*. at pp. 15-16.)

Gerber represented the State in Drollinger's PCR cases, Malheur County Case No. 02-02-1725M and Malheur County Case No. 02-03-1819. (Gerber Decl. (docket # 51), ¶ 4.) During the course of these cases, Gerber exchanged letters and spoke over the phone with Drollinger. (Gerber Decl. at ¶¶ 5-6; Third Am. Compl. at ¶¶ 15, 21-22; Drollinger Decl. (docket # 72), ¶¶ 7, 12-13.) On or about December 23, 2005, Gerber agreed to file a motion to reinstate both of

Drollinger's PCR cases, and she did so. (Gerber Decl. at ¶¶ 6, 9, Exs. 3, 4; Third Am. Compl. at ¶ 24; Drollinger Decl. at ¶¶ 11-13.) She also agreed to contact SRCI if Drollinger ran into any problems preparing for his cases. (Gerber Decl. at ¶¶ 7-8, Exs. 3, 4; Third Am. Compl. at ¶ 19; Drollinger Decl. at ¶¶ 11-13.) At some point, Gerber did contact SRCI to ensure Drollinger was receiving adequate time in the law library.[1] (Gerber Decl. at ¶ 10.) She understood that aside from making the request for more time, there was nothing further she could do, since she is not a prison official. (*Id.*) Gerber was informed by SRCI staff that Drollinger was receiving more time in the law library than most, if not all, other inmates. (*Id.*)

In May 2006, Drollinger thought he hired counsel for both of his PCR cases, but later learned that counsel was only acting on his behalf in one of his cases. (Drollinger Decl. at ¶¶ 14-15, Attach. 9; Third Am. Compl. at ¶ 25.) In late October 2006, Drollinger learned that he was without counsel in PCR Case No. 02-02-1725M, so he notified Gerber that he was unrepresented and acting *pro se* on that case, asked her if she opposed his filing of an amended petition, and notified her that he needed more time in the law library. (Drollinger Decl. at ¶ 15; Third Am. Compl. at ¶¶ 27-33.) According to Drollinger, Gerber did not respond to any of his written requests until January 26, 2007. (Drollinger Decl. at ¶¶ 16-17; Third Am. Compl. at ¶¶ 26-29.)

On January 22, 2007, Drollinger's motion for a change of venue in Case No. 02-02-1725M was denied because Gerber did not consent.[2] (Drollinger Decl. at ¶ 19; Third Am.

---

[1] Drollinger disagrees with Gerber's characterization that she contacted SRCI on "several occasions," claiming that she did not contact SRCI until late January 2007, which was too late to be effective. (Drollinger Decl. at ¶¶ 15-17; Third Am. Compl. at ¶ 30.)

[2] The court notes that earlier that year, shortly after retaining counsel in Case No 02-03-1819M, Drollinger's motion for a change of venue in that case was denied. (Gerber Decl., Attach. 2 at p. 12.)

Page -3- FINDINGS AND RECOMMENDATION                                    {SSM}

Compl. at ¶ 31; Gerber Decl., Attach. 1 at p. 15.) On January 30, 2007, Drollinger's motion to file an amended petition in Case No. 02-02-1725M was similarly denied. (Drollinger Decl. at ¶ 18; Third Am. Compl. at ¶ 28; Gerber Decl., Attach. 1 at p. 15.) At some point thereafter, Drollinger moved to voluntarily dismiss his PCR cases without prejudice so that he could have time to amend the petitions and gather evidence to support his claims. (Third Am. Compl. at ¶ 32.)

At the hearing on Drollinger's motion to dismiss, held on February 2, 2007, Gerber objected to dismissal without prejudice and argued for dismissal with prejudice. (*Id.* at ¶ 34; Gerber Decl., Attach. 1 at p. 16.) In support of her argument, Gerber represented to the court that the DOJ had done all it could to make sure Drollinger had plenty of law library time, the DOJ had gone above and beyond in terms of allowing Drollinger as much time as possible, Drollinger had fired his attorney as of January 16, 2007, the court set a firm trial date after Drollinger fired his attorney, and she was unable to correspond directly with Drollinger because he was represented by counsel up until January 16, 2007. (Drollinger Decl. at ¶ 21; Third Am. Compl. at ¶¶ 34-35.) On March 2, 2007, a judgment of dismissal was entered in favor of the state on Case No. 02-03-1819M. (Gerber Decl. at ¶ 11, Ex. 2, p. 14.) A judgment of dismissal was entered in favor of the state on March 5, 2007, in Case No. 02-02-1725M. (Gerber Decl. at ¶ 12, Ex. 1, p. 16.) Drollinger appealed both cases on March 29, 2007. (Gerber Decl. at ¶¶ 11-12.)

During a January 19, 2008, hearing on Drollinger's second motion for relief from judgment, Gerber recommended to the court that because Drollinger did attempt to notify the parties that he was unrepresented in PCR Case No. 02-02-1725M, the proper remedy would be to allow him to litigate that case. (Third Am. Compl. at ¶ 35.) The motion was denied. (*Id.*)

Sometime thereafter, Drollinger's new PCR counsel contacted Gerber to discuss whether she would agree not to oppose a successive PCR petition because of her "negligent oversight" in failing to communicate with Drollinger from October 2006 - January 2007. (*Id.* at ¶¶ 44-46.) At that time, Gerber indicated that she wanted to look back at the record before taking a position. (*Id.* at ¶ 48.)

In February 2010, before she was able to take a position regarding whether she would oppose successive PCR petitions, Gerber was arrested for assault, ultimately leading to her resignation on April 15, 2010. (*Id.* at ¶¶ 49, 51-52.) Sometime in March 2010, prior to her resignation, Gerber contacted Drollinger's PCR counsel, Richard Cowan ("Cowan") and told him that the DOJ would not oppose Drollinger's filing of a successive PCR petition in Case No. 09-06-7413P, because he was not represented in his the underlying petition, Case No. 02-02-1725M. (*Id.* at ¶ 50; Drollinger Decl. at ¶ 23, Attach. 12.) The DOJ would oppose the successive filing in Case No. 09-06-7414P, because Drollinger was represented by counsel in the underlying Case No. 02-03-1819M. (*Id.*) On September 10, 2010, the DOJ, led by Kroger, and acting through AAG Nordyke, moved to dismiss both of Drollinger's PCR petitions. (Third Am. Compl. at ¶ 55.)

Drollinger filed suit in this court on January 30, 2009. On August 21, 2009, the court dismissed the complaint with leave to amend. After several other filings, the court granted Drollinger's motion for leave to file a third amended complaint on October 21, 2010. By way of remedy he seeks injunctive relief in the form of performance of Gerber's agreement not to oppose his successive petition in Case No. 09-06-7413P, and money damages.

///

*Legal Standard*

Summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Id.*

In civil cases involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008). *Pro se* complaints are held to a less strict standard than those drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Bonner v. Lewis*, 857 F.2d 559, 563 (9th Cir. 1988). Before dismissing a *pro se* complaint, the court must, in many circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend. *See Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). Nevertheless, a *pro se* plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in support that would entitle him to relief. *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008).

*Discussion*

A. Statute of Limitations

Drollinger's third amended complaint alleges various claims arising out of defendants' conduct during his PCR proceedings. He brings these claims pursuant to § 1983 and state contract and tort law. It is well-settled that because § 1983 does not contain a specific statute of

limitations for constitutional torts, federal courts use the analogous state statute for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *superseded by statute on other grounds*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004). In Oregon, the statute of limitations for personal injury actions is two years. OR. REV. STAT. 12.110(1); *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989).

The question of when a claim accrues is governed by federal law. *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000). A federal claim accrues and the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991), *cert. denied*, 502 U.S. 1091 (1992) (internal citation and quotation omitted). Federal law also controls when an action "commences" for purposes of the statute of limitations. *Sain v. City of Bend*, 309 F.3d 1134, 1136 (9th Cir. 2002). Under FED. R. CIV. P. 3, a § 1983 action commences in federal district court for purposes of the statute of limitations when the complaint is filed. *Id.* at 1138. Drollinger agrees with defendants that the statue of limitations began to run on March 5, 2007, when the court entered its judgment of dismissal in Case No. 02-02-1725M. Drollinger filed his original complaint on January 30, 2009, which is well within the two-year statute of limitations. Therefore, his claims are not time-barred.

B. State Law Claims

Defendants contend that Drollinger's state law claims for negligence and breach of contract are barred by the Eleventh Amendment. It is well-established that the Eleventh Amendment bars citizens from bringing suit in federal court against a state or state entity unless Congress has abrogated the state's immunity, or the state has expressly consented to waive it.

Page -7- FINDINGS AND RECOMMENDATION {SSM}

*Alabama v. Pugh,*, 782 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Supplemental jurisdiction is also limited by the bar imposed by the Eleventh Amendment. *Raygor v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 540-42 (2002).[3]

1. Substitution

Defendants contend that the Oregon Tort Claims Act ("OTCA") requires that the State of Oregon be substituted as the only defendant for Drollinger's negligence claims against Gerber (Second Claim and Eighth Claim) and Meyers (Fifth Claim). Once the State is substituted, Eleventh Amendment immunity attaches and Drollinger's claims fail as a matter of law because Oregon has not waived its sovereign immunity.

Oregon law requires that "the sole cause of action for any tort of officers, employees, or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." OR. REV. STAT. 30.265(1). The rule applies only where the state agent acted within the scope of their employment duties. *Hesseldahl v. Oregon Dep't. of Veterans' Affairs*, Civil No. 05-1649-TC, 2007 WL 1541502, at * 4 (D. Or. May 23, 2007). Under Oregon law, the court should consider the following factors in analyzing whether an employee was acting within scope of their employment for purposes of OR. REV. STAT. 30.265(1): (1) whether the employee's actions occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated at least partially

---

[3] The court notes that while the Eleventh Amendment prevents state officials acting in their official capacity from being sued for monetary damages, they may be sued for prospective injunctive relief under § 1983 because such actions are "not treated as actions against the state." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) and citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)) (injunctive relief). Drollinger's claim for injunctive relief should be denied, as discussed below.

by a purpose to serve the employer; and (3) whether the act was of a kind that the employee was hired to perform. *Brungardt v. Barton*, 69 Or. App. 440, 443, 685 P.2d 1021, 1023 (1984) (citing *Stanfield v. Laccoarce*, 284 Or. 651, 655, 588 P.2d 1271, 1274 (1978)).

Here, even viewing the record in the light most favorable to Drollinger, the court cannot conclude that a reasonable factfinder would conclude that any of the defendants' actions were taken outside the scope of their employment. All of Drollinger's allegations relate to actions taken or not taken by various members of the Attorney General's Office while handling Drollinger's PCR proceedings. Thus, for purposes of the OTCA, defendants were acting within the scope of their employment and the State of Oregon is the proper defendant for Drollinger's negligence claim. Once the State is substituted as the defendant, Eleventh Amendment immunity applies, unless Oregon has waived it.

The State of Oregon has consented to be sued in Oregon courts for torts committed by its employees, agents, and officers acting within the scope of their employment under the OTCA, but has not explicitly waived its immunity to such claims in federal court. *Cram v. Oregon*, Civil No. 08-6365-HO, 2010 WL 1062555, at * 3 (D. Or. March 23, 2010) (citing *Blair v. Toran*, Civil No. 99-956-ST, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999)). Because Oregon has not waived its Eleventh Amendment immunity for tort claims, Drollinger's negligence claims (Second, Fifth, and Eighth Claims) are barred by the Eleventh Amendment.[4]

2. Breach of Contract

Drollinger alleges claims for breach of contract against Gerber (First Claim) and Meyers

---

[4] Because the court finds that the Eleventh Amendment bars Drollinger's negligence claims, it declines to consider whether Drollinger complied with the notice provisions of the OTCA.

Page -9- FINDINGS AND RECOMMENDATION                                              {SSM}

(Seventh Claim). Defendants contend that these claims are barred by the Eleventh Amendment because while the State of Oregon has waived its sovereign immunity to contract claims in its own courts, it has not waived immunity in federal court. OR. REV. STAT. 30.320 contains a general waiver of common law immunity, which provides in relevant part, "[a] suit or action may be maintained against . . . the State of Oregon by and through and in the name of the appropriate state agency upon a contract made by . . . such agency and within the scope of its authority." It is well-established that "a state does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 676 (1999). Oregon did not unequivocally consent to suit in federal court when it enacted OR. REV. STAT. 30.320. *Olson v. Oregon University System ex. rel. Pernsteiner*, Civil No. 09-167-MO, 2009 WL 1270293, at * 6 (D. Or. May 6, 2009). Consequently, the Eleventh Amendment bars Drollinger's breach of contract claims (First and Seventh Claim).

C.  § 1983 Claims

    1. Respondeat Superior

Defendants argue that Meyers and Kroger cannot be liable for Drollinger's § 1983 claims under a *respondeat superior* theory, solely because they served as the Attorney General during the relevant periods underlying Drollinger's PCR proceedings. As a general rule, "[l]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999) (citation omitted). Accordingly, "state officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). "A plaintiff must

facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. There is no vicarious liability under § 1983. *Id.* "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Drollinger names Meyers and Kroger as defendants for actions taken in their capacities as supervisors, by virtue of holding the office of Attorney General. All the allegations that relate to them are on the basis that they failed to take action to remedy the violations perpetrated by attorneys in their office, or otherwise failed to prevent further harm.

Specifically with regard to Meyers, Drollinger alleges that he sent a letter to him on July 27, 2005, regarding another AAG's alleged misconduct in handling his PCR cases. (Drollinger Decl., Attach. 6.) Two years later, on December 18, 2007, he sent another letter to Meyers, complaining about Gerber's conduct and alleged misrepresentations in prosecuting his PCR cases. (Memo. in Opp. to Summ. J. (docket # 71), Attach. 7.) Drollinger alleges that once he sent the letters to Myers complaining of his subordinates' conduct, Myers had a duty to ensure that Drollinger would not suffer any further harm by any other AAG's conduct in handling his PCR cases. While the record establishes that Drollinger did complain to Meyers regarding his concerns about the way the attorneys assigned to his PCR cases were handling them, this is not enough to establish the necessary personal involvement required to sustain a § 1983 claim. The mere sending of a letter is not enough to establish that a public official such as Meyers was deliberately refusing to act and thereby actively participating in the alleged violation of Drollinger's constitutional rights. Additionally, Meyers stated that at no time was he personally

Page -11- FINDINGS AND RECOMMENDATION                                    {SSM}

involved in Drollinger's PCR proceedings, nor was he personally aware of Drollinger's concerns regarding Gerber or any other attorneys handling of his cases. (Myers Decl. (docket #50), ¶¶ 2-5.)

Drollinger's only allegation against Kroger is that once he served his third amended complaint on September 29, 2010, adding Kroger as a defendant in his role as the Attorney General, Kroger was made aware of Gerber's alleged misconduct and failed to take action to remedy it or prevent further harm. According to Drollinger, upon learning of Gerber's alleged misconduct, Kroger should have withdrawn the State's motions to dismiss Drollinger's successive PCR petitions, prior to the hearing on December 7, 2010. Without more, this is not enough to establish the requisite personal involvement necessary to sustain a § 1983 claim.

Accordingly, there is no issue of material fact regarding whether Meyers or Kroger were personally involved in Drollinger's alleged constitutional harms. Thus, they should be granted summary judgment on the Sixth and Tenth Claims for Relief, Drollinger's § 1983 claims against them.

2. Absolute Immunity

Defendants argue that Drollinger's claims are barred by the doctrine of prosecutorial immunity. "[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). This immunity extends to activities relating to the introduction and presentation of criminal prosecutions and undertaken in the course of the prosecutor's role as the state's advocate. *Id.* at 431; *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Prosecutors and state attorneys also are protected by immunity in post-conviction proceedings." *Cannon v. Polk County Dist. Atty.*, Civil

No. 10-224-HA, 2010 WL 4226467, at *3 (D. Or. Oct. 20, 2010).

The heart of Drollinger's third amended complaint is that defendants took actions associated with the judicial phase of his PCR proceedings. The fact that defendants were representing state prison officials and did not prosecute Drollinger's criminal case makes no difference for absolute immunity purposes. *See id.* While Drollinger appears to allege that defendants took action that was wholly outside the realm of acceptable behavior for a state attorney, he has not made any allegations that defendants took any actions that were not associated with his PCR cases. Drollinger's attempt to characterize his Eighth and Ninth Claims for Relief against Gerber as actions that were wholly unrelated to her role in prosecuting his PCR proceedings is misplaced. Those claims allege that because of Gerber's assault arrest, she was unable to ensure her promise to not oppose his successive PCR petition. (Third Am. Compl. at ¶¶ 63-64.) Even though Gerber's arrest was wholly unrelated to her job duties as an AAG, Drollinger's complaint is that because of this behavior, Gerber had to resign and therefore was unable to uphold her promise to allow his successive PCR petition. Consequently, every claim is related to the defendants' conduct as it related to their ability to take or not take certain action related to his PCR proceedings.

The court also rejects Drollinger's argument that because the third amended complaint has made it through the screening process, the court cannot dismiss it at this stage on the basis of absolute immunity. It is well-established in cases such as this, where a prisoner is proceeding *in forma pauperis* in an action seeking redress from a governmental entity, officer, or employee, that the court shall dismiss the case at any time if the action seeks monetary relief against a defendant that is immune to such relief. 28 U.S.C. §§ 1915(e)(2)(B)(iii). The court's decision

to not dismiss defendants on the basis of absolute immunity during the screening process does not mean that it may not do so at this juncture.

Consequently, all defendants are entitled to absolute immunity for liability for damages based on their conduct during his PCR proceedings. All claims for damages against them should be dismissed.

### 3. Qualified Immunity

Defendants contend that they are entitled to qualified immunity as individuals for any alleged violations of Drollinger's § 1983 rights. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, public officials are generally immune from civil liability unless their actions violate clearly established law because "a reasonably competent public official should know the law governing his conduct." *Id.* "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotations omitted). The key inquiry in determining whether an officer has qualified immunity is whether the he or she has "fair warning" that the conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

In order to determine whether the doctrine of qualified immunity applies to individual defendants, the court must decide whether the plaintiff has shown that a constitutional or statutory right has been violated and whether the right at issue was "clearly established" at the

time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court recently held that lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The clearly established inquiry "must be undertaken in the light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Officials may be held liable only for violation of a right the "contours [of which are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. Therefore, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* To be clearly established, the law need not be a "precise formulation of the standard" where "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Id.*

As discussed below, there is no genuine issue of material fact regarding whether Drollinger's constitutional rights were violated under the First or Fourteenth Amendments, so the court need not reach the issue of whether the rights were clearly established. Defendants should be granted qualified immunity on the Third, Fourth, Sixth, Ninth, and Tenth Claims for Relief.

### a. First Amendment: Access to Courts

State prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a violation of this right, Drollinger must establish that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). An "actual injury" is

"actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

Here, Drollinger alleges that Gerber failed to correspond with him "in the ordinary course of litigation," thereby obstructing his access to the courts. The record shows that Gerber communicated with Drollinger by phone and letter several times during the course of his PCR proceedings, and contacted SRCI at least once on his behalf in order to ensure that he was receiving adequate time in the law library to prepare his cases. (Gerber Decl. at ¶¶ 5-10; Drollinger Decl. at ¶¶ 7, 11-13.) At most, Gerber did not communicate directly with Drollinger for a three-month period, from late October 2006 to late January 2007, when she thought that he was represented by counsel and was therefore prohibited from communicating with him. (Drollinger Decl. at ¶¶ 16-17; Third Am. Compl. at ¶¶ 26-29.)

Drollinger appears to argue that because Gerber recognized that she made a mistake and agreed not to oppose his successive PCR petition in order to remedy this mistake, this is evidence that his rights were violated. However, without more, this does not rise to the level of a constitutional violation because Drollinger has failed to establish that he was actually injured by Gerber's communication oversight. Drollinger's successive petition is brought on the basis of newly discovered exculpatory evidence, including an expert audio analysis report of Drollinger's taped confession which was received by Drollinger sometime after January 26, 2008, and an April 30, 2008, letter from prosecuting district attorney Gary Williams. (*See* Memo. in Opp. to Summ. J., Attach. 16 at pp. 2-3 (Second Amended Successive Petition for PCR).) Drollinger has not alleged any causal link whatsoever between Gerber's communication oversight and the discovery of this evidence. Also, this evidence was discovered more than a year after Gerber's

communication oversight and more than ten months after Drollinger's initial PCR cases were dismissed with prejudice. Consequently, even giving Drollinger the benefit of every reasonable inference, there is no evidence that Gerber, or any other defendants, took any action caused an "actual injury" that interfered with his meaningful access to the courts.

### b. Fourteenth Amendment: Due Process

Defendants contend that they are entitled to summary judgment because Drollinger cannot prove that they took any action that deprived him of his right to due process. The Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. A § 1983 claim based upon the deprivation of procedural due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A threshold requirement of procedural due process is a constitutionally protected property interest. *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

Drollinger alleges that his due process rights were violated because he was denied "fundamentally fair proceedings," when Gerber refused to correspond with him or adhere to the promises she made to ensure that he had adequate time in the law library, to not oppose his motion to change the venue, and later agreement not to oppose his successive PCR petition. Drollinger appears to assert that because Gerber did not adhere to these promises, he was unable to move his cases forward and lost the opportunity to amend his petitions to include his claim for prosecutorial misconduct and ineffective assistance of counsel on the basis of newly discovered evidence, thereby losing his opportunity for full and fair PCR proceedings. Drollinger overlooks

that Gerber was his adversary in his PCR proceedings and had no duty to help him perfect his claims or to agree to not oppose his various motions. Moreover, as discussed above, the newly discovered exculpatory evidence was discovered by Drollinger almost a year after his original petitions were dismissed. Drollinger's dissatisfaction with the outcome of the proceedings does not equate to a violation of his due process rights.

D. Injunctive Relief

Even though defendants are entitled to summary judgment on all of Drollinger's claims, the court briefly addresses his request for injunctive relief in the form of performance of Gerber's agreement not to oppose his successive petition in Case No. 09-06-7413P. The court previously denied Drollinger's request for similar injunctive relief when it dismissed his original complaint for failure to state a claim. (*See* Order to Dismiss (docket #5) at p. 5.) Drollinger's requested injunctive relief is substantially the same now as when originally requested. Consequently, the court denies this request for the same reasons as before. Namely, the longstanding principle that where the injunctive relief requested would require the federal court to supervise ongoing state-court proceedings, federal courts should refrain from issuing an injunction as a matter of comity and federalism. *Pulliam v. Allen*, 466 U.S. 522, 539 (1984)

*Recommendation*

For the reasons discussed above, defendants' motion for summary judgment (docket # 47) should be GRANTED.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 29, 2011. If no objections are filed, then the Findings and Recommendation will

go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of September, 2011.

                                          JOHN V. ACOSTA
                                      United States Magistrate Judge